Page 1 of 3

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ASHLEY PRUNTY,

    Plaintiff,

v.                                    CASE NO. 1:13-cv-00254-MP-GRJ

CAROLYN W COLVIN,

    Defendant.

_____/

**O R D E R**

This cause comes on for consideration upon the Magistrate Judge's Report and Recommendation dated February 9, 2015. (Doc. 13). The parties have been furnished a copy of the Report and Recommendation and have been afforded an opportunity to file objections pursuant to Title 28, United States Code, Section 636(b)(1). Plaintiff has filed objections at Doc. 16, and defendant has responded at Doc. 17. I have made a de novo review based on those objections and response.

Having considered the Report and Recommendation, and the timely filed objections and responses, I have determined that the Report and Recommendation should be adopted. In this case, plaintiff raises two arguments which both relate to Listing 12.05C. First, she argues that the ALJ should have retained a medical expert to explain to him how people's IQ test scores could be artificially high for various reasons, such as having taken many tests in the past, for example. Second, she argues that once the Court reduces the score appropriately, plaintiff fits into Listing 12.05C. These arguments miss the point for the following reasons.

The plaintiff attempts to fit into Listing 12.05, which involves intellectual disability and

states as follows:

> 12.05 Intellectual disability: intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

The plaintiff agrees that A,B and D do not apply to plaintiff, so 12.05C is the one involved in this case.  That section requires the following:

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

Plaintiff argues that the IQ should be considered less than 70 because of the practice effect described above and the "Flynn effect" (describing the rise in test scores over the last few decades).  Even if it were, however, it would not make a difference.  In the introductory paragraph of 12.00, the Commissioner states as follows:

> The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

In other words, plaintiff has to show an IQ score in the correct range and "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  The regulations continue by explaining that adaptive functioning refers to

> adaptive activities such as cleaning, shopping, cooking, taking public

transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office.

20 C.F.R. pt. 404. supt. P, app. 1, § 12.00(C)(1). Specifically, the regulations state:

> [W]e assess the quality of these activities by their independence, appropriateness, effectiveness, and sustainability. We will determine the extent to which you are capable of initiating and participating in activities independent of supervision or direction.

Here, the ALJ explained that Mr. Odden rated Plaintiff's self-help skills as only "low average" compared to her age group Moreover, Plaintiff reported that she was able to bathe, dress, and feed herself independently. She was also able to drive a car around the Fargo-Morehead area with minimal supervision The ALJ also explained that Plaintiff had the ability to cook simple meals, wash dishes, clean the house, and do laundry. Moreover, at the administrative hearing, Plaintiff mentioned doing household chores, including cleaning her room, sweeping/mopping the kitchen, laundry, vacuuming, and occasionally cooking. Plaintiff was able to care for her dog, drive by herself with no problems navigating, work part-time at McDonald's, and baby-sit for two young children for 1 to 1.5 hours at a time. Accordingly, Plaintiff's activities did not demonstrate deficits in adaptive functioning.  Thus, plaintiff did not meet Listing 12.05C even if a medical expert were able to convince the ALJ that the IQ should be a few points lower.  Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

The magistrate judge's Report and Recommendation is adopted and incorporated by reference in this order.   The decision of the Commissioner, denying benefits, is affirmed.

**DONE AND ORDERED** this   *26th* day of March, 2015

*s/Maurice M. Paul*
Maurice M. Paul, Senior District Judge

*Case No: 1:13-cv-00254-MP-GRJ*